The last case today is 4-18-0274, in re K.E. For the appellant is Cheryl Varughese. Varghese. Varghese. And for the appellee, Mr. Zimmerman. Okay, Mrs. Varghese. Good afternoon, your honors, and may it please the court. Counsel. Counsel. My name is Cheryl Varghese. I'm from the Office of the State Appellate Defender, and I represent K.E. The first issue in this case is that to revoke K.E.'s supervision, the state had to prove that he failed to complete sex offender treatment and that he had contact with the victim, B.L. E or or. Or. They could have proven one or the other. And in this case, we argue that they did not prove either of them. As to the treatment condition, the court ordered K.E. to undergo and complete sex offender evaluation and counseling as recommended. The state's evidence that K.E. failed to complete sex offender treatment was that he was discharged from treatment on August 31, 2017. But as K.E.'s counselor explained in his confidential treatment memo, K.E. was primarily discharged from treatment because his therapist was informed that K.E. was going to spend a lengthy amount of time at the juvenile detention center and that he may not return to the community. This is because K.E. incurred new legal charges in August 2017. Indeed, K.E.'s therapist actually discharged him from treatment two days after the state filed its first petition to revoke in this case. Now, the case... Had he missed any appointments or whatever for treatment? Had he missed any settings? I can't think of the right word. Yes, Your Honor. He already had? Yes, Your Honor. At the time that he was discharged from treatment, his therapist did note that he had missed one out of three sessions in July and that he had missed a couple of sessions throughout. Now, Michael Warnick, the probation officer who testified at the hearing on the petition to revoke, did note that K.E. attended a majority of his sessions, but he did miss a couple of his sessions. Well, your argument then is that's not why he was terminated for missing his session. Yes, Your Honor. It was anticipation that he was going to miss additional sessions? Yes, Your Honor, because at the time that he was discharged from treatment, his therapist specifically noted a few reasons why he was discharged from treatment. But at the time he was reinstated into treatment in December 2017, those reasons still existed. He had still missed a couple of sessions. He had still had difficulty applying treatment concepts. Those very reasons existed at the moment he was discharged and at the moment he was reinstated. The only factor that was different was that at the time he was discharged, his therapist was under the impression that he was going to be sent to GJJ for a very long time. When he was reinstated, his therapist specifically wrote in his confidential treatment memo that he believed K.E. could successfully complete treatment by the end of February 2018. That suggests that his treatment provider did not believe that missing a few sessions was enough for him to be able to successfully complete treatment. Further, because the court did not impose a date by which time K.E. needed to complete treatment, he seemingly had to complete treatment only within the 48 months of supervision he was sentenced to. The hearing was in January 2018, which was roughly 23 months into his 48 months. Wouldn't the state only have to show at the time that the petition to terminate was filed? He had already failed one of the conditions as being the condition to obtain the treatment? Your Honor, if we were to do a strict interpretation, then yes, if K.E. had missed even one treatment session, that might be enough to actually revoke his supervision. But the purpose, one of the main purposes behind probation, behind sex offender treatment, behind even the juvenile court act, is rehabilitation. In this case, the court specifically ordered him to undergo and complete sex offender evaluation and treatment as recommended. The therapist still believed at the time of the hearing on the petition to revoke that K.E. could successfully complete treatment. And K.E. indeed did, in fact, complete treatment at the end of February 2018. And while that was not a factor for the court to take into consideration, it should be noted that he continued to go to treatment even after his supervision was revoked. Turning to the no contact condition, the court ordered K.E. to have no contact directly or indirectly with B.L., to not go near B.L.'s residence, and to not attend any school she attends. The state's evidence that K.E. had contact with B.L. consisted of the following. B.L. testified that she attended Eisenhower High School, that she was a cheerleader, and that she attended the turkey tournament at Stephen Decatur Middle School in November 2017. B.L. testified that while she was cheering, she saw K.E. walk in. Later that day, she looked to her left, and she saw K.E. with a group of people that she was not familiar with, standing about 15 feet away. The next day, she saw K.E. again, and she immediately informed a police officer. B.L. stated that K.E. was at the top of the bleachers with friends, and when he noticed she was pointing at him, he attempted to hide. B.L. did not see K.E. again after he was escorted out of the building. B.L. also testified, however, that K.E. did not talk to her, K.E. did not attempt to approach her, and that there were a lot of people at this tournament. Now, this is not surprising because holiday tournaments such as these usually involve somewhere between 4 to 16 basketball teams. Further, there was no evidence that K.E. knew B.L. was a cheerleader for Eisenhower High School, that K.E. knew Eisenhower High School was participating in this tournament. No, the first day, anyway. Your Honor, there was actually no evidence that K.E. saw B.L. on the first day. There was just evidence that B.L. saw K.E. Now, the trial court found that because she was a cheerleader, it was presupposed that he must have seen her. But in a basketball tournament that involves anywhere from 4 to 16 schools, there's no indication that K.E. was in this stadium when B.L. was cheering. The first day wasn't the one where he was within 15 feet of her. Yes, Your Honor, but significantly, that was not when she was cheering. She simply testified that she was standing there, she looked to her left, and she saw him within 15 feet of her. But in a very crowded area with a lot of kids, I mean, for a basketball tournament to include 4 to 16 schools means that there are going to be many attendees. With that many kids, there's no assumption that he for sure saw her. Just because she saw him does not mean that he saw her. The next day we know he did. Yes, Your Honor, the only indication that he saw her, the only evidence that could be construed that way, is she testified when she pointed him out with a police officer standing next to her that he attempted to hide. But even then, there's no indication that K.E. for sure saw B.L. That might have just been evidence that K.E. saw the police officer. And considering that K.E., consciousness of guilt has to be related to evidence of guilt of exactly which offense. Like, for instance, in this case, K.E., there might have been many different offenses he might have been committing. He was ordered not to be around four other boys. He was standing with a group of friends. There was a chance that he saw the police officer, knew that he was sitting with a group of friends that he was not allowed to be with, and that's why he was hiding. Or that he saw the police officer, and knowing his history with police officers, just instinctively hid. Is that what was testified to? Well, she testified that when he noticed her pointing to him, he hid. So even if we take that at face value, that he actually saw her at that exact time, he did exactly what we expect juveniles to do when they see the person they're ordered not to have contact with, which is he left the tournament and he did not come back. Now, he was sitting at the top of the bleachers when she was pointing him out. So it's premature to say that he wouldn't have left on his own if given the opportunity. In this case, this police officer escorted him out, but it's significant that he did not come back. In fact, BL testified that she did not see him after that one instance. So we would ask this court to find that the state did not prove that he had contact with her, especially because case law states that contact means association, relationship, connection, communication, and to get into communication with. Because BL and KE are around the same age, in the same community, it's not a stretch to say that they will often find themselves in the same place at the same time. Now, if they found themselves in the same place and at the same time and neither of them noticed, it would not be a violation of a no-contact order. Similarly, if they found themselves at the same place at the same time and only BL noticed, it would still not be a violation of a no-contact order. In this case, the second that there was evidence that could be construed that KE saw BL, he left the tournament and he did not return. Thus, the state did not prove that he had contact, as defined in case law, with BL. Alternatively, even if this court finds that the state did prove that KE violated a condition of his supervision, the probation condition requiring KE to submit to warrantless searches absent reasonable suspicion is unreasonable and violates his Fourth Amendment right to be free from unreasonable searches and seizures. In this case, the court ordered KE to permit the probation office to visit his home, school, or elsewhere to the extent necessary as determined by the probation office and further submit to searches of his person, residence, automobile, and orifax at any time such requests are made by the probation office and consent to the use of everything seized as evidence in court proceedings. The condition as written is unreasonable because it allows KE to be subjected to warrantless, suspicionless searches at any time for any reason. The condition as written is unconstitutionally broad because, as the Illinois Supreme Court held in People v. Lampetock, a probation search requires at least some suspicion. Indeed, the Lampetock court noted that a clear majority of federal courts of appeal require reasonable suspicion to support a probation search. And in Lampetock, the court required reasonable suspicion to search the probationer's motel room because it noted that a search of a person's home could not be characterized as a minor invasion of privacy. The purpose in asking that a reasonable suspicion requirement be written into the condition is to prevent illegal Fourth Amendment searches before they happen instead of bringing it to the court's attention after they happen. Here, a probation officer testified that she had conducted knock-in talks and referred to them as proactive events that they were having. Specifically, she testified that at least on two occasions, she had proactive interventions where she had gone to KE's residence and searched his residence or his room for weapons. In both situations, they did not find weapons. Her use of the word proactive interventions suggests that there was no individualized reasonable suspicion to search KE's residence. And because a probation department can continue to subject KE to these illegal Fourth Amendment searches by referring to them as knock-in talks with no consequences as long as no evidence is seized, KE asked that this court strike the condition or, in the alternative, ask the trial court to add the reasonable suspicion requirement into the language itself. Counsel, the terms of the probation search condition for your client are different than those in Lambentock. Do you agree with that? Yes, Your Honor. Well, isn't that significant? Well, Your Honor, in this case, while the word shall is not used, it still requires some kind of consent from the probationer himself. Also, what's significant is that in Lambentock, the court still found that some suspicion has to be present. The court noted that there have been no situations where the courts have allowed probation searches of an individual's residence without any kind of suspicion. In this case... Yes, but here your client agrees that anything found can be used in a subsequent hearing. Your Honor... And that wasn't in Lambentock. No, Your Honor. Over in Lambentock, didn't it also say that the search had to be based upon... to find something which would be indicative that there had been a breach of the probation condition? A violation, I should say. Yes, Your Honor. In Lambentock, they had to find reasonable suspicion that there was a violation of a probation condition. Here, the language is more restrictive, but it still does not mean that it's prospective consent. And while this issue has not been litigated in the trial court, the language in this case, in this specific condition, essentially marries the language in the other conditions that were required of K.E. They all require some kind of action on his part. So we would argue that this is not prospective consent. That he still has to consent to the use of deceased evidence. He's just limited in his options. If he does not provide consent, he is going to violate his probation. And so for that reason... But he can choose. He can choose to either comply with the condition or not. Yes, Your Honor. That's correct. But by adding a reasonable suspicion requirement into the language itself, it informs our clients as well as probation officers that prior to arriving at a client's house or at K.E.'s house, there must be some kind of reasonable suspicion. Now, K.E. can always consent, thus making it not a Fourth Amendment violation. Well, that has to do with the search. It doesn't have to do necessarily with the condition of the probation order. Lambentock doesn't hold that the probation order itself has to include that language. No, Your Honor. The search has to have some sort of reasonable suspicion behind it. Yes, Your Honor. Lambentock only dealt with what happens after an illegal Fourth Amendment search has already occurred. It does not hold that the probation condition itself does have to include... But there's no such issue yet in this case. This is all speculative, isn't it? Yes, Your Honor. The reason we're asking for this reasonable suspicion requirement is so that we can prevent an illegal Fourth Amendment search as well as informing our clients and probation officers what is demanded by case law at this current time, which is case law unequivocally states that a reasonable suspicion or some level of suspicion needs to be there before a probation officer can search. So that is why we ask that this Court either strike the condition outright or that this Court remand it back to the trial court to add that requirement into the condition. If this Court has no further questions, we ask that this Court reverse K.E.'s revocation of his supervision or alternatively remand this back to the trial court. Thank you, Your Honors. May it please the Court.  Counsel. Good afternoon, Your Honors. My name is John Zimmerman from the Fourth District Appellate Prosecutor's Office here on behalf of the State. In this case, the State's position is that no error occurred when the trial court revoked the Respondent's supervision and that Respondent's probation condition was not unconstitutional or unreasonable and moreover that issue has been forfeited as it was not raised below. In regards to the first issue, the State proved by a preponderance of the evidence at the petition to revoke the hearing that Respondent violated a condition of the supervision as he was unsuccessfully terminated from treatment. When Respondent was sentenced in this case, the trial court ordered Respondent to complete the evaluation and comply with treatment recommendations. Now in Counsel's reply brief, she states that that conversation was actually between Respondent's mother and the trial court. However, if you actually look at the record, the report of proceedings, the trial court is speaking to the mother but also to the Respondent as well because she is obviously the guardian of the minor in this case, ensuring that the minor is well aware of what is required of him. Further evidencing Respondent's knowledge of the requirements is the Juvenile Sex Offender Treatment Program contract that he signed, which is page C-225 of the record, where he agrees to attend all scheduled counseling sessions. He understands that if he misses more than three, he may be given a negative discharge and he will be honest in his group, he will partake and he will do his best to comply with all the requirements. Now as set forth at the petition to revoke hearing, Respondent failed to do so. The probation officer testified he was terminated for numerous reasons. One was his continued alleged illegal behavior, which Your Honors and Counsel previously discussed, but it was also a result of his refusing to use trick concepts using treatment, his failure to take accountability, and he only attended one of four treatment sessions between July 27th and August 17th. Are these alternative grounds for the Court's findings? These are alternative grounds. The trial court was aware of this, it acknowledged it in its finding, that even though the Respondent had returned to treatment, he still found his previous termination was a result of other reasons that the State has just discussed. So as a result, this was sufficient to prove a probation violation. Quite simply, Respondent violated a direct order from the trial court to comply with these treatment recommendations. He was unsuccessfully discharged and as a result, he violated his supervision. Thus, no error occurred regarding the trial court's finding. Again, this was only a preponderance of the evidence the State needed to prove and it is against the manifest weight of the evidence standard, so that is a very deferential standard, as Your Honors are aware. Now in regards to the no-contact condition of the supervision, the State's petition to revoke alleged Respondent had no contact directly or indirectly with the victim. The trial court further stated, where she goes, he's going to go somewhere else. Now, counsel discussed these facts in great detail, so the State will not go over them with Your Honors. However, the trial court used circumstantial evidence in this case. Yes, there was no direct testimony that Respondent saw the victim. However, through the victim's testimony, the trial court could find it more probably true than not that the Respondent was aware she was there, especially, these are full-day events. He was there the first day within 15 feet of her. It's probably more likely than not he was aware that she was there and he chose to come back on the second day. And this is a very important fact that I believe the trial court relied on in finding that Respondent had also violated this no-contact condition. Moreover, the consciousness of guilt Respondent was hiding when the minor and the police officer were looking at him, that somewhat shows that he was aware that she was present. No contact under the State's theory would be that if he goes in the gymnasium where the basketball game is going on, is sitting way at the top of the bleachers, she's cheerleading on the floor, that that was enough contact to be considered a violation. Based on the facts of the State's probation condition. Yes, Your Honor. She clearly felt uneasy, she felt uncomfortable, clearly the supervision condition is to prevent these types of situations, whereas the State set forth in its brief, even if he's only 15 feet away, if he's looking at her, that is clearly a violation of what the trial court was meaning. Oh, he was looking at her? No, that was not part of the evidence. I don't want to put the court in the wrong direction, but this is all circumstantial evidence that the trial court could have utilized based on her testimony. They were in the same gymnasium for two full days, he was within 15 feet of her, he at one point was aware that she was pointing at him, so it can be concluded, more likely than not, that he had contact with her. Again, the trial court specifically ordered the respondent, where she goes, you're to go somewhere else. If this was just a 10-minute thing, as counsel was talking about, and they just kind of walked past each other and it was just real fast, then the State would somewhat agree with your sentiment that maybe that's not a reason for revoking this supervision. However, where he consciously chose to come back the second day after, more than likely than not being aware that she was there the first day, as the trial court found, she was a cheerleader, she was out in front of everybody, he more likely than not saw her and he chose to come back. As I understand the significance of the revocation of the supervision replaced by probation is that he now has to register as a sex offender. Am I right about that? Yes, that was what ultimately... I mean, one of the main significant factors. And the trial court was very easygoing, I would say, with the initial sentence of supervision. The trial court talks about its thought process regarding this, and ultimately it was aware that in revoking this that he would most likely have to be sentenced for sex offender registration. Moreover, there's no intent element in this supervision condition. It doesn't say the defendant has to knowingly be aware that she's there, that he intentionally makes contact. Again, it could be indirect contact, which could be the respondent contacting the victim through a friend. And even though they're still not in the same facility, that could still be considered indirect contact. And that's a violation of supervision. So regarding that no contact violation, there was no error made by the trial court, and this court should affirm. Alternatively, regarding the probation condition, which allows the probation officer the ability to search respondent, he argues this impermissibly infringes on his Fourth Amendment right to be free from unreasonable searches and seizures because it lacks a reasonableness requirement. He did not, Your Honor. This is a forfeited issue. Although the procedural forfeiture bars are relaxed for minors, they still must at least object to the claimed error at the trial level. He did not do so, so it's forfeited and plain error does not apply, as set forth in our brief. Moreover, probation is not a right but a privilege. As the Supreme Court of the United States has said, it's always true of probationers that they do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty, properly dependent on observance of special probation restrictions. Indeed, for these reasons, conditions of probation that impinge on fundamental constitutional rights are not automatically deemed invalid. The overarching concern is reasonableness. Now here, the Illinois Supreme Court has held that Illinois has a legitimate interest in promoting its probation system effectively. One way to do that is to ensure probation officers do not need a warrant every time they are to search the probationer. As a result, our courts have held that you do not need probable cause to search a probationer. And again, it has to be reasonable. Here, the trial court did not abuse its discretion when imposing this condition, as it allows the state's interest in promoting its probation system effectively by protecting the public and also ensuring respondents' rehabilitation. Moreover, respondents' reliance on Lampentock is misplaced. Unlike Lampentock, here there is no warrantless and suspicionless search. Another further distinguishable factor is that the defendant in Lampentock was not actually a probationer. He was an acquaintance who occupied a motel room with the probationer at the time the probation officers searched the premises. And regardless of that, respondents cite no authority within the brief for support that the probation condition by itself is unconstitutional merely because it does not contain a reasonable suspicion requirement. Further, just because there is no reasonable suspicion requirement does not mean that any potential searches were not supported by reasonable suspicion. As set forth in our brief, when the probation officer talked about these proactive knock-and-talks, I believe it was a she, she stated she was concerned that the respondent was involved in gang activity. And in fact, I think there was some ABC treatment evaluation records that further confirmed the fact that he was in a gang. So I believe that would support reasonable suspicion for these probationary searches. But as Justice Steigman said, that's all speculation. This case is not based upon a search, but instead a probation condition. And that probation condition was not unreasonable or unconstitutional. And the State requests this Court to affirm. If there's no further questions, the State will rest. Thank you, Counsel. Ms. Varghese, any rebuttal? Thank you, Your Honors. To read compliance as requiring perfection is unreasonable. With a probation condition, as written in this case, only required that K.E. undergo and complete treatment, which he was doing at the time of the petition to revoke. But he'd actually been terminated from treatment. Yes, Your Honor, but he was invited back into treatment. It's not like the king's ex that means that it didn't happen. It just means that, okay, he's back in treatment. But it doesn't negate the fact that he had, in fact, been terminated from treatment for several reasons. And the Court specifically found that it was his termination from treatment, along with picking up a couple gun charges, that were sufficient basis to show that he violated probation, right? Yes, Your Honor, but we would argue that, once again, the reasons he was discharged from treatment initially still exist at the time he was reinstated into treatment. So what? I don't understand what the significance of that is. Because it shows that the primary reason he was discharged from treatment was because the therapist was told that K.E. would be sent to D.J.J. based on the new charges. But the new charges were dismissed by the State in its newest case, and they also were unable to prove those allegations in the first petition. Did the trial court say, quote, The evidence is, although he's been reinstated in treatment, he was discharged from treatment primarily because he had two gun violations last summer, one of which the State agreed to sentence him to probation on, and one of which was unproven. But he was, in fact, terminated for that, among other reasons. This, the discharge summary of September 15, shows other reasons for his discharge. So I'm going to find that the allegations have been proven by a preponderance of the evidence. What's wrong with that? Your Honor, we would argue that it was against the manifest weight of the evidence because he was told, he was required to complete sex offender treatment. At the time of the petition, he could still successfully complete sex offender treatment. Right, but at the time of the petition, he actually, no, at the time of the petition, he actually determined at the time of the hearing he was back in treatment, right? Yes, Your Honor, which is why we would argue that the State acted prematurely in going forward with this at the actual petition to revoke the hearing. The State cites a no case law where this specific set of facts is at issue. The cases all show that, or the cases that I could find show that. Did he have a gun violation while he was on probation? Yes, Your Honor. Did he plead to probation as a result of that? Yes, Your Honor. Was that while he was on supervision? Yes, Your Honor. Done. But the State did not move to revoke his supervision based on that gun violation. If the State had moved to revoke his supervision... Was there an objection at the time of the hearing that this allegation shouldn't be alleged or shouldn't be considered by the court? Whether the first petition... During the petition, during the hearing on the petition to violate in this case, was there an objection to the State proving up the gun violation? No, Your Honor. I don't believe that there was an objection to that. Was it alleged? It was not alleged. I mean, the second petition to revoke and the third petition to revoke were based solely on the sex offender treatment and the no contact order. There was no question about the initial case that he pled guilty to. He pled guilty to unlawful possession of a firearm based on charges in July  But the State had brought new charges in the first petition to revoke. That was based on an entirely new case, 17JD197. In that case, the State was unable to prove it. But he pled to one? He pled to one, but the State did not move to revoke his supervision based on that pleading. So that wasn't even an allegation in the petition? No, that was not included in the petition to revoke. If that had been included in the petition to revoke, then K.E.'s supervision should have been revoked because he did plead guilty to that. But these petitions to revoke were specifically limited to sex offender treatment and to his no contact order. One of the reasons he was terminated from treatment was because he had further criminal violations, right? Yes, Your Honor, but in the discharge memo, it specifically stated that after he pleaded guilty to that initial gun violation, his treatment provider had still had a session with him, and his treatment provider had asked him not to have guns anymore. And it was after the second charge was brought against him that his attorney learned his lesson that he kept continuing to get these gun violations. So he terminated him. But that second violation was based on evidence that the State was not able to prove. In fact, in that petition to revoke, the State was not even able to prove that in a petition to revoke hearing. But he wanted a condition. I'm sorry. Oh, no, sorry, Your Honor. I see that I'm out of time. Would you like me to? No, I'm good. Thank you. Okay, counsel. Thank you. We're done here. Complete the arguments, and the court will take this case under advisement. Be in recess.